24–1670

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CHRISTOPHER C. HAMBIDGE,

*Claimant–Appellant*

v.

DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,

*Respondent–Appellee*

Appeals from the United States Court of Appeals for Veterans Claims
in No. 23–2589, Judges Joseph L. Falvey, Jr., Grant Jaquith & Joseph L. Toth.

### CORRECTED BRIEF OF AMICUS CURIAE NATIONAL VETERANS LEGAL SERVICES PROGRAM IN SUPPORT OF CLAIMANT-APPELLANT AND REVERSAL

Alec W. Farr
Jonathan I. Tietz
Kathleen E. Wills
Kerensa Gimre
PERKINS COIE LLP
700 13th Street NW, Suite 800
Washington, DC 20005
Phone: (202) 434–1603
E-mail: AFarr@perkinscoie.com

Counsel for *Amicus* National Veterans Legal Services Program

June 24, 2024

CERTIFICATE OF INTEREST

I certify that the following information is accurate and complete to the best of my knowledge.

Date: June 24, 2024     Signature:   /s/Alec W. Farr

Name:     Alec W. Farr

| 1. Represented Entity | 2. Real Party in Interest | 3. Parent Corporations and 10% Stockholders |
|---|---|---|
| National Veterans Legal Services Program | none | none |

| 4. Other Legal Representatives |
|---|
| none |

| 5. Related Case |
|---|
| n/a (amicus) |

| 6. Organizational Victims and Bankruptcy Cases |
|---|
| none |

# TABLE OF CONTENTS

Certificate of Interest ................................................................i

Table of Authorities ................................................................iv

Table of Abbreviations and Conventions ..................................ix

Interest of *Amicus Curiae* ......................................................1

Introduction ............................................................................2

Argument.................................................................................4

   I.   The Veterans Court's muddled view of its writ authority is contrary to law, contrary to the purpose of that court, and harmful to veterans ......4

      A.   The Veterans Court's authority to grant writ relief is undisputed and is not limited to writs of mandamus............................................5

      B.   Congress's purpose in establishing the Veterans Court was to ensure that veterans receive the benefits we owe them.....................8

      C.   Despite its statutory purpose and authorization, the Veterans Court rarely finds a case that warrants writ relief under its test.......11

      D.   The Veterans Court is increasingly "troubled" or "baffled" by the VA's inaction but still declines to act.........................................13

      E.   Simply "trusting" the VA to make changes fails to afford veterans proper relief.........................................................................16

      F.   The meaningful availability of an injunctive writ would not burden the VA or the Veterans Court................................................16

   II.   The Veterans Court's inaction is contrary to law, harmful to Mr. Hambidge, and contrary to the veterans benefit system's pro-claimant purpose........................................................................18

      A.   There is no indication or statement from the Secretary of an intent to change the VA's challenged regulation ............................19

      B.   The Secretary has not acted, even assuming the Secretary intends to..................................................................................20

C.   Reapplication of the regulation is likely and may harm Mr.
     Hambidge and other veterans ...........................................................21

D.   The Veterans Court's mootness doctrine is contrary to the
     veterans-benefits system's pro-claimant nature ...............................23

Conclusion ....................................................................................................25

Certificate of Compliance ...........................................................................26

## Cases

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ................................................22

*Barrett v. Nicholson*,
466 F.3d 1038 (Fed. Cir. 2006)................................. 10, 23

*Barrett v. Principi*,
363 F.3d 1316 (Fed. Cir. 2004)..................................... 8, 24

*Bates v. Nicholson*,
398 F.3d 1355 (Fed. Cir. 2005)..................................... 6, 12

*Beaudette v. McDonough*,
93 F.4th 1361 (Fed. Cir. 2024) .............................................6

*Boone v. Lightner*,
319 U.S. 561 (1943)..............................................................8

*Cantrell v. Shulkin*,
28 Vet. App. 382 (2017) ....................................................15

*Chapman L. Firm Co. v. Greenleaf Const. Co.*,
490 F.3d 934 (Fed. Cir. 2007)..........................................20

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982)...........................................................19

*Cnty. of L.A. v. Davis*,
440 U.S. 625 (1979)...........................................................20

*Cockrum v. McDonald*,
No. 16-3717, 2016 WL 7029320 (Vet. App. Dec. 2, 2016) ................................11

*Cox v. West*,
149 F.3d 1360 (Fed. Cir. 1998).........................................6

*CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*,
637 F.3d 408 (D.C. Cir. 2011) ..........................................21

*Duncan v. Wilkie,*
   842 F. App'x 609 (Fed. Cir. 2021) ....................................................12

*Erspamer v. Derwinski,*
   1 Vet. App. 3 (1990) ......................................................................13

*Fahey, Ex parte*
   332 U.S. 258 (1947) .........................................................................6

*F.T.C v. Dean Foods Co.,*
   384 U.S. 597 (1966) .........................................................................5

*Fortyune v. Am. Multi-Cinema, Inc.,*
   364 F.3d 1075 (9th Cir. 2004) ........................................................22

*Found., Inc. v. McDonough,*
   36 Vet. App. 345 (2023), *appeal dismissed,* No. 2023-2383, 2023 WL 7101992
   (Fed. Cir. Oct. 27, 2023) ...............................................................8

*Freund v. McDonough,*
   35 Vet. App. 466 (2022) .......................................................... passim

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
   528 U.S. 167 *(2000)* ................................................................ 20, 21

*Gates v. Cook,*
   376 F.3d 323 (5th Cir. 2004) ..........................................................21

*Hambidge v. McDonough,*
   No. 23-2589, 2024 WL 1091731 (Vet. App. 2024) .............................15

*Hodge v. West,*
   155 F.3d 1356 (Fed. Cir. 1998) .......................................................24

*Howard v. Shinseki,*
   No. 14-504, 2014 WL 1569189 (Vet. App. Apr. 21, 2014) .................15

*Jemmott v. Wilkie,*
   No. 20-1255, 2020 WL 1894644 (Vet. App. Apr. 17, 2020) ........ 14, 16

*Johnson v. Robison,*
   415 U.S. 361 (1974) .........................................................................8

*LaBruzza v. McDonough*,
 37 Vet. App. 111 (2024) ............................................................ 15, 16

*Love v. McDonough*,
 100 F.4th 1388 (Fed. Cir. 2024) .............................................5

*Love v. McDonough*,
 35 Vet. App. 336 (2022), *aff'd,* 100 F.4th 1388 (Fed. Cir. 2024).......................5

*Lowe v. Shinseki*,
 No. 13-2504, 2013 WL 5428791 (Vet. App. Sept. 30, 2013) .................... 11, 15

*Monk v. Shulkin*,
 855 F.3d 1312 (Fed. Cir. 2017).......................................... 6, 12

*Moore v. McDonough*,
 No. 23-0677, 2024 WL 1617918 (Vet. App. Apr. 15, 2024) ..........................14

*Nat'l Org. of Veterans' Advocs. Inc. v. Sec'y of Veterans,*
 *Affs.*, 981 F.3d 1360 (Fed. Cir. 2020) ...............................................19

*New York Pub. Int. Rsch. Grp. v. Whitman*,
 321 F.3d 316 (2d Cir. 2003).............................................................21

*Shinseki v. Sanders*,
 556 U.S. 396 (2009) ........................................................... 8, 23

*Starbucks Corp. v. McKinney*,
 No. 23-367, 2024 WL 2964141 (2024) ............................................7

*Telecommunications Rsch. & Action Ctr. v. F.C.C.*,
 750 F.2d 70 (D.C. Cir. 1984) ......................................................5

*United States v. N.Y. Tel. Co.*,
 434 U.S. 159 (1977)..................................................................5

*United States v. Oregon*,
 366 U.S. 643 (1961)...........................................................8

*Voge v. United States*,
 844 F.2d 776 (Fed. Cir. 1988)..............................................19

*Walters v. Nat'l Ass'n of Radiation Survivors*,
473 U.S. 305 (1985) ...................................................................23

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .....................................................................17

*Zenith Radio Corp. v. United States*,
710 F.2d 806 (Fed. Cir. 1983) .................................................6

**Statutes**

28 U.S.C. § 1651 ......................................................................3, 5

38 U.S.C. § 3319(h)(5) ................................................................10

38 U.S.C. § 3695 ......................................................................2, 5

38 U.S.C. § 5103A .......................................................................23

38 U.S.C. § 7252(a) ......................................................................6

38 U.S.C. § 7266(a) ......................................................................6

Pub. L. No. 100-687, 102 Stat. 4105 (1988) .............................1

**Regulations**

38 C.F.R. § 0.601(c) ...................................................................23

38 C.F.R. § 21.3040 ....................................................................10

38 C.F.R. § 21.4020 .............................................................. 4, 5, 21

38 C.F.R. § 21.4020(b) ......................................................... 2, 18, 20

**Other Authorities**

Dep't of Defense, *Modernized Social Compact: Report of the
First Quadrennial Quality of Life Review* at ii (2004) .........8

Donald H. Rumsfeld, *The Annual Defense Report: 2004 Report
to the President and to the Congress* (Cosimo ed., 2005) ...................8

The White House, *National Security Presidential Directive*
(NSPD-2) (Feb. 15, 2001) ..........................................................8

U.S. Dep't of Veterans Affairs, *VA's Mission to Better Serve All*,
VA News (May 7, 2023)..........................................................................8

## Table of Abbreviations and Conventions

Appx__            appendix page __

AWA               All Writs Act

BlueBr__          claimant–appellant Mr. Hambidge's opening brief, page __

Secretary         Secretary of Veterans Affairs

VA                United States Department of Veterans Affairs

Veterans Court    U.S. Court of Appeals for Veterans Claims

VJRA              Veterans' Judicial Review Act

The National Veterans Legal Services Program (NVLSP) is an independent nonprofit organization that serves our nation's active-duty service members and 18 million veterans. Since 1981, NVLSP has worked to ensure that the government honors its commitment to deliver the benefits our veterans and service members earned through their military service to our country.

Among other services, NVLSP prepares, presents, and prosecutes veterans' benefits claims before the Department of Veterans Affairs (VA), pursues veterans' rights legislation, and advocates before this Court and others concerning issues of importance to veterans. NVLSP also recruits, trains, and assists thousands of pro bono lawyers and non-lawyers to effectively represent veterans before the VA and other agencies. It also publishes the leading practice guide in the field, the *Veterans Benefits Manual*, for advocates who assist veterans and their families in obtaining benefits from the VA. NVLSP also provided critical leadership in supporting passage of the Veterans' Judicial Review Act (VJRA), Pub. L. No. 100-687, 102 Stat. 4105 (1988), which created the Court of Appeals for Veterans Claims.

---

[*] No party's counsel authored any part of this brief, and no one other than *amicus* and their counsel contributed money to fund its preparation or submission. Fed. R. App. P. 29(a)(4)(E). All parties consent to filing this brief. Fed. R. App. P. 29(a).

This case presents important questions regarding the ability of veterans and their beneficiaries to enlist the authority of federal courts to correct and prevent erroneous decisions by the Secretary of Veterans Affairs (Secretary) concerning the benefits they earned through military service. The Court's decision will significantly impact the many veterans and their beneficiaries that NVLSP serves.

## INTRODUCTION

The veterans benefit system is meant to be pro-claimant. The Secretary has a duty to assist claimants, and the adjudicatory process is not meant to be adversarial. Unfortunately, the Secretary's actions do not always reflect this philosophy. Veterans often find that the only way to access the full benefits that they have earned through their service is to file a petition or appeal with the Veterans Court, prompting the VA to fix issues *ad hoc* for a particular veteran, if it fixes them at all. That happened, in part, to Mr. Hambidge. But such particularized—and often incomplete—relief leaves many veterans in the lurch, subject to improper and inconsistent decisions that jeopardize their benefits.

This case presents a particularly egregious example of inaction by the Secretary that harms veterans. It is not disputed that 38 C.F.R. § 21.4020(b) is an unlawful regulation, as it conflicts with Congress's amended statutory provision, 38 U.S.C. § 3695, which grants an 81-month cap of educational benefits to veterans receiving Chapter 33 benefits. More than a decade has passed and yet the Secretary

has not updated the regulation to align with the amended statute. Nor has the Secretary signaled any intention to withdraw or amend the regulation. As shown in Mr. Hambidge's case, and as has happened to other veterans, veterans are still harmed by the premature capping of their earned benefits due to the unlawful regulation in ways that cannot be remedied in the ordinary course of an appeal.

Writ relief under the All Writs Act (AWA), 28 U.S.C. § 1651, is designed to address this type of problem. The AWA allows courts to issue writs necessary or appropriate in aid of their respective or prospective jurisdiction that, without action, would frustrate the ability of the court to exercise its appellate jurisdiction. The AWA provides procedural instruments that are designed to achieve the rational ends of the law and fill gaps in judicial review. The Veterans Court can issue writs under the Act and can compel agency action. Yet it often does not do so even when it should. This case and others like it illustrate the problem: the Veterans Court has repeatedly expressed its dismay at the Secretary's failure to update the regulation but has found each individual case unextraordinary or not warranting relief under the Act.

As the Veterans Court said, "Mr. Hambidge's case demonstrates the dangers of VA's inaction on this legal issue." Appx6. Without the preliminary injunction pending appeal that he seeks, Mr. Hambidge faces irreparable harm that is likely to occur again as he and his university continue to seek recertification of his

education benefits throughout the duration of his program in the face of a still-binding yet unlawful regulation.

NVLSP files this *amicus* brief to explain that the Veterans Court's reading of its authority under the AWA and its decision to graft mandamus factors onto other available *non*-mandamus writ relief tests broadly affects veterans like Mr. Hambidge and causes them harm.

ARGUMENT

## I.     The Veterans Court's muddled view of its writ authority is contrary to law, contrary to the purpose of that court, and harmful to veterans

The Veterans Court misapplies the All Writs Act in ways that are both too narrow and too broad. That court errs when it narrowly reads its jurisdiction under the AWA and, in doing so, often denies veterans' proper requests for writ relief. Mr. Hambidge's case is a prime example. The Veterans Court also errs when it broadly imports the standards for a writ of mandamus into applications for other kinds of AWA relief, like injunctive writs.

The parties agree on several aspects of this case, and yet the Veterans Court improperly declined to exercise its jurisdiction to grant Mr. Hambidge the requested injunctive writ relief. First, the parties agree that Mr. Hambidge was fully entitled to Chapters 33 and 35 benefits subject to the 81-month limit but was unlawfully limited to 48 months under the VA's regulation, 38 C.F.R. § 21.4020. Appx1–2, Appx4, which the agency, including the Board of Veterans' Appeals, is

required to follow. 38 U.S.C. § 7104(c). Second, the parties agree that § 21.4020 is "flatly inconsistent with the statute," 38 U.S.C. § 3695. Appx6. Third, the Secretary has been aware of the inconsistency for over a decade but has not updated the unlawful regulation to match the statute. Appx4, Appx6. Finally, it is undisputed that the Veterans Court has authority to issue writs in aid of its jurisdiction under the All Writs Act. Appx3. Despite Mr. Hambidge's "strong likelihood of succeeding in his appeal," the Veterans Court denied his request for a writ of injunction. Appx4; Appx6.

### A. The Veterans Court's authority to grant writ relief is undisputed and is not limited to writs of mandamus

The AWA authorizes all courts established by Congress to issue writs "necessary or appropriate in aid of their respective jurisdictions," *Love v. McDonough*, 100 F.4th 1388, 1392–93 (Fed. Cir. 2024), including "to protect [their] prospective jurisdiction," *Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 76 (D.C. Cir. 1984) (citing *F.T.C v. Dean Foods Co.*, 384 U.S. 597, 603–04 (1966)). Otherwise, "an alleged refusal to act would forever frustrate the ability of [that court] to exercise its appellate jurisdiction." *Love v. McDonough*, 35 Vet. App. 336, 342 (2022), *aff'd*, 100 F.4th 1388 (Fed. Cir. 2024). The AWA is a "legislatively approved source of procedural instruments designed to achieve the rational ends of law." *United States v. N.Y. Tel. Co*., 434 U.S. 159, 172 (1977) (citation omitted). The AWA therefore permits courts to "fill gaps in their judicial

power where those gaps would thwart the otherwise proper exercise of their jurisdiction." *Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017).

The Veterans Court, created by Congress, can issue writs under the AWA. *Monk*, 855 F.3d at 1318; *Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998). The court, for instance, can compel agency action, such as order the Secretary to take action that can result in a Board decision for its review. *Cox*, 149 F.3d at 1364; 38 U.S.C. §§ 7252(a), 7266(a). Cases without a perfected appeal still fall within the Veterans Court's appellate jurisdiction. *Monk*, 855 F.3d at 1318.

Not all writs, however, are writs of mandamus. The AWA's writ power makes available an injunction, mandamus, prohibition, stay of administrative action pending appeal, and consolidation of claims into class actions, to name a few. *See, e.g.*, *Zenith Radio Corp. v. United States*, 710 F.2d 806, 808–09 (Fed. Cir. 1983); *Beaudette v. McDonough*, 93 F.4th 1361, 1366 (Fed. Cir. 2024); *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947); *Bates v. Nicholson*, 398 F.3d 1355, 1366 (Fed. Cir. 2005); *Monk*, 855 F.3d at 1317. Therefore, grafting the standards or framework for a writ of mandamus—a specific, narrow form of writ relief— onto other available writ relief improperly changes the legal standard and increases the burden for veterans.

The Supreme Court recently reiterated that "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will

exercise that authority in a manner consistent with traditional principles of equity." *Starbucks Corp. v. McKinney*, No. 23-367, 2024 WL 2964141, at *4 (2024). "For preliminary injunctions, the four criteria in *Winter* encompass the relevant equitable principles." *Id*. That case, like this one, involved a request for injunctive relief pending the outcome of an administrative proceeding. *Id*. at *2. And that case, like this one, involved a court fashioning a test involving considerations apart from the traditional four-factor test. *Id*. at *3. The newly fashioned test was erroneous because "absent a clear command from Congress, courts must adhere to the traditional four-factor test." *Id*. at *4. Likewise, this Court should reject the Veterans Court's synthesized test that departs from the traditional equitable principles of *Winter*.

In this case, the Veterans Court acknowledged that Mr. Hambidge's request for an injunction is a remedy available under the court's AWA authority. Appx3. Yet the court departed from familiar injunction frameworks when it "synthesized" its own test from the "distinct" injunction factors and mandamus factors. Appx3. This is not the first time the Veterans Court has synthesized two different standards when evaluating a request for writ relief, as it has done when synthesizing the mandamus and traditional stay factors. *See Purpose Built Fams. Found., Inc. v. McDonough*, 36 Vet. App. 345, 357 (2023). It should not continue doing so.

**B.    Congress's purpose in establishing the Veterans Court was to ensure that veterans receive the benefits we owe them**

Veterans are promised by the government that they will be taken care of in exchange for risking harm to serve and defend this country. "The solicitude of Congress for veterans is of long standing." *United States v. Oregon*, 366 U.S. 643, 647 (1961). "A veteran, after all, has performed an especially important service for the Nation, often at the risk of his or her own life." *Shinseki v. Sanders*, 556 U.S. 396, 412 (2009). Veterans incur "the economic and family detriments which are peculiar to military service." *Johnson v. Robison*, 415 U.S. 361, 380 (1974). Therefore, in recognition of these sacrifices, Congress has chosen to favor "those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 U.S. 561, 575 (1943).

The veterans-benefits scheme overall reflects Congress's intent to "award entitlements to a special class of citizens, those who risked harm to serve and defend their country," and "[t]his entire scheme is imbued with special beneficence from a grateful sovereign." *Barrett v. Principi*, 363 F.3d 1316, 1320 (Fed. Cir. 2004) (citation omitted). The modern suite of veterans benefits that is part of that social compact includes many different benefits for military personnel and their families. In 2001, President Bush issued a directive creating a "new social compact" with military families. The White House, *National Security Presidential*

*Directive (NSPD-2)* (Feb. 15, 2001).[1] This "new generation of military recruits has aspirations and expectations for quality of life services and access to health care, education, and living conditions that are" consistent "with the American standard of living." Donald H. Rumsfeld, *The Annual Defense Report: 2004 Report to the President and to the Congress* 19 (Cosimo ed., 2005). And making good on its commitments to servicemembers is necessary to ensure "continued readiness to fight and win the Nation's wars." Dep't of Defense, *Modernized Social Compact: Report of the First Quadrennial Quality of Life Review* at ii (2004).

Educational benefits are some of the most prevalent and well-known modern benefits to servicemembers. Those benefits have had tremendous positive impacts on veterans and on society more generally. In addition to providing veterans access to career pathways that were traditionally reserved for the wealthy classes, educational benefits for veterans transformed higher education and provided a crucial recruiting tool. The VA's mission is to "fulfill President Lincoln's promise to care for those who have served in our nation's military and for their families, caregivers, and survivors." U.S. Dep't of Veterans Affairs, *VA's Mission to Better Serve All*, VA News (May 7, 2023).[2]

---

[1] https://irp.fas.org/offdocs/nspd/nspd-2.pdf [https://perma.cc/C27P-GFEV].

[2] https://news.va.gov/118943/vas-mission-to-better-serve-all/ [https://perma.cc/FBL3-DEG9].

Congress created the Veterans Court "for the purpose of ensuring that veterans [are] treated fairly by the government and to see that all veterans entitled to benefits receive[] them[.]" *Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006). The Veterans Court's jurisdiction should not be construed in a way that undermines its purpose to make sure that the government fulfills its promises to veterans. The Veterans Court's mootness/injunction approach, however, frustrates the ability of veterans to receive all the benefits they are due. The Veterans Court reasoned in this case that "appeal [of] any future adverse Agency decision affecting [Mr. Hambidge's] continued entitlement" to educational benefits would constitute "an adequate alternative means of relief." Appx1. But the length of the appeal process, *see, e.g.*, *Martin v. O'Rouke¸* 891 F.3d 1338, 1350 (Fed. Cir. 2018) (Moore, J., concurring), compared with the length of time of relevant educational programs—especially graduate programs—means that many veterans either will be pushed out mid-way from graduate programs that they can no longer afford or will be dissuaded from starting those programs at all. Additionally, certain benefits contain time and age limits. *See, e.g.*, 38 U.S.C. § 3319(h)(5); 38 C.F.R. § 21.3040. Or they become practically out of reach as potential beneficiaries pursue other options.

At bottom, the way in which the Veterans Court understands and applies its writ authority should not cut against the ability of the veterans-benefits system as a whole to ensure that veterans receive what they are due.

### C. Despite its statutory purpose and authorization, the Veterans Court rarely finds a case that warrants writ relief under its test

The Veterans Court acknowledged that it had the authority under the AWA to issue extraordinary writs in aid of its jurisdiction but concluded that Mr. Hambidge's case did not warrant such relief. This is unfortunately common. In *amicus*'s experience, often the veteran files a petition, the VA grants that specific veteran part of the relief he or she seeks, and the Veterans Court uses that untimely correction by the VA as a reason to avoid taking further action. *See, e.g.*, *Cockrum v. McDonald*, No. 16-3717, 2016 WL 7029320, at *1 (Vet. App. Dec. 2, 2016) (dismissing petition as moot because the VA granted the relief sought after petitioner filed a petition for writ of mandamus to compel benefits); *Lowe v. Shinseki*, No. 13-2504, 2013 WL 5428791, at *2 (Vet. App. Sept. 30, 2013) (denying petition as moot and declining to award fees and expenses since the veteran did not prevail "because the Secretary has accomplished the principal relief Mr. Lowe seeks … the RO has certified the appeal to the Board and … Mr. Lowe will soon receive a hearing with the Board"); *Freund v. McDonough*, 35 Vet. App. 466, 471, 478–79 (2022) (dismissed the action as moot "[d]espite our concerns

about the issues petitioners raise and the significance of the matter" because the VA had since reactivated the petitioners' administrative appeals). However, such relief granted by the VA may not come, may not be complete, or does not come until *after* the veteran has gathered his or her resources to file a petition with the Veterans Court and is already engaged in the process.

One pro se veteran has referred to this "pattern of remand and subsequent evasion by the VA" as administrative "ping pong" that results in successive writ petitions and no real relief. *Duncan v. Wilkie*, 842 F. App'x 609, 612 (Fed. Cir. 2021). This Court agreed that "frustration" is "understandable." *Id.*

This is also not the first time the Veterans Court has expressed an overly narrow view about its own authority. This Court has held that the Veterans Court abused its discretion where it incorrectly found that it lacked authority to act, noting the Veterans Court's authority under the AWA, other statutory authority, and inherent powers. *See, e.g.*, *Monk*, 855 F.3d at 1318 (holding that the AWA permits class action certification in the Veterans Court); *Bates*, 398 F.3d at 1366 (holding that Veterans Court had jurisdiction and a writ of mandamus should issue directing the Board to decide the matter). And the Veterans Court has at times in the past disagreed with the Secretary's narrow read of "jurisdiction" under the AWA when the VA has opposed relief in litigation, particularly where "the substantial body of case law supports a broader interpretation." *Erspamer v.*

*Derwinski*, 1 Vet. App. 3, 8 (1990). Its synthesized test, however, walks that position back.

Here, the Court should find that the Veterans Court's inaction—the latest of many cases where the court finds it lacks authority under the act and denies vital benefits—was an abuse of discretion.

### D. The Veterans Court is increasingly "troubled" or "baffled" by the VA's inaction but still declines to act

The Veterans Court was "deeply troubled" in this case by the VA's inaction but declined to act. Indeed, it was "baffled" by the inconsistency between the regulation and statute, as well as the "Secretary's failure to revise" the regulation in the past dozen years. Appx4. Yet the Secretary has been aware of the inconsistent regulation and statute, as evidenced by the VA's internal manual that *does* purport to apply the statute instead of the regulation. Appx11–12; BlueBr20–21. This case is just the latest in a long line of such decisions in which the Veterans Court expresses regret, scolds, and *recommends* that the Secretary take action—but ultimately concludes that it lacks authority to *direct* that the Secretary take action.

The Secretary is often aware of the problems veterans raise in their petitions. In *Freund*, it was "clear" even to the VA that there were erroneous closures of veteran appeals in the Veterans Appeals Control and Locator System and yet there was no "comprehensive plan" or notice to claimants about the problem. 35 Vet. App. at 470, 475–79. Even worse, the Secretary "came perilously close to

misleading the Court" by suggesting there was a plan to address the problem where there was not one. *Id*. at 470. In *Jemmott*, the petitioner asked the Veterans Court to compel a VA decision, but the case was remanded instead and the VA continued not to process his claim or schedule examinations *for another two years*— prompting the Court to eventually order the Secretary's response. *Jemmott v. Wilkie*, No. 20-1255, 2020 WL 1894644, at *1 (Vet. App. Apr. 17, 2020). The Veterans Court was "troubled" by the Secretary's response that "offered no explanation for VA's almost 2-year delay" in scheduling examinations for the veteran. *Id.* at *2. Although it denied the petition, the court nevertheless added that the veteran "may file *another* writ of mandamus" if he still "does not receive a timely decision from the Board." *Id*. at *3 (emphasis added). In *Moore*, the Veterans Court found it "astounding" that "counsel for the Secretary had this case for nearly a year and did not notice" that there was no appealable issue. *Moore v. McDonough*, No. 23-0677, 2024 WL 1617918, at *1 (Vet. App. Apr. 15, 2024). When it became too late for the VA to file for dismissal, the court remarked, "[t]hat kind of delay is a waste of everyone's time," is "troubling," and "we hope it doesn't happen again." *Id.* at n.1.

There are several other cases chastising the Secretary's inaction, even though the court did not grant the petitioners relief. *See Lowe,* 2013 WL 5428791, at *3 ("[T]he Court is troubled by the Secretary's inaction in this case. … Given

Mr. Lowe's documentation that he timely filed a Substantive Appeal, it should not have been necessary for him to file a petition in this Court: The Secretary should have investigated his inquiries and responded appropriately…."); *LaBruzza v. McDonough*, 37 Vet. App. 111, 127 (2024) (recounting VA inaction over several years despite "repeated litigation over the issue and our insistence that [the Secretary] provide the … guidance"); *Cantrell v. Shulkin,* 28 Vet. App. 382, 392, 395–96 (2017) (remanding the appeal while expressly stating that it "has little confidence" that the VA will do better "without further guidance from the Secretary"); *Howard v. Shinseki,* No. 14-504, 2014 WL 1569189, at *1 (Vet. App. Apr. 21, 2014) (noting that the court might be "forced to find unreasonable delay," "sympathizes with the petitioner's objections," and "reminds the Secretary" that petitioner's observation that VA has not taken action is not without some merit).

In *Hambidge*, the latest addition to the long line of such cases, the Veterans Court noted in its "final word" that it "[wa]s troubled by the VA's inaction" and the VA's "ongoing failure for more than a decade to revise" the regulation and that, despite the Secretary learning of the "inconsistency front and center, there has been no formal notice" of its intention to amend. Appx6.

As demonstrated further below, the Veterans Court's mootness/injunction test broadly prevents meaningful relief and places additional burdens on veterans

to file petitions in order for the VA to act during the course of adjudication or appeal.

**E.  Simply "trusting" the VA to make changes fails to afford veterans proper relief**

The Veterans Court, when denying relief, frequently says that it "trust[s]" that the Secretary will provide relief. For example, in *Freund*, the Veterans Court said that "[w]e trust the Secretary will continue to follow through with the plans." 35 Vet. App. at 470. In *Jemmott*, the Veterans Court denied relief but stated that it "trusts that VA will address [the veteran's] claim in a timely manner," that its decision would be "correct as well as prompt" and that further petitions for mandamus "will not be necessary." 2020 WL 1894644, at *3. As shown above, the Veterans Court has also previously "insisted" (but not ordered) that the Secretary take action, such as providing guidance to VA adjudicators, to no avail. *See, e.g.*, *LaBruzza*, 37 Vet. App. at 127. Those nudges are not enough. There is no sign that the VA actually does so—and speculation that the VA will make changes is no substitute for meaningful, certain relief. While it gives *amicus* no pleasure to say, the Veterans Court's "trust" is misplaced.

**F.  The meaningful availability of an injunctive writ would not burden the VA or the Veterans Court**

Were the Veterans Court to apply the approach that Mr. Hambidge advocates, it would not open the floodgates to an injunction on behalf of every

claimant facing delay. Mr. Hambidge asks that the Veterans Court apply the traditional four-factor *Winter* preliminary-injunction test. *See* BlueBr32. That test requires (1) that the movant is "likely to succeed on the merits," (2) that the movant is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that the "balance of equities tips in" the movant's favor, and (4) that "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Veterans Court should apply the irreparable-harm factor by recognizing that veterans like Mr. Hambidge should only need to show a likelihood or realistic threat that they will suffer irreparable harm—not an absolute certainty of irreparable harm. This formulation is particularly appropriate because the other three prongs of the *Winter* test serve as a robust check on any relief that would unduly burden the VA.

As Mr. Hambidge's brief explains, his showing on the likelihood-of-success factor here was ironclad. BlueBr35. That factor differentiates cases like this— where the VA has not acted despite a clearly unlawful rule in what the Veterans Court deems "baffl[ing]" "nonfeasance," Appx4, Appx6—from other, less-clear-cut legal disputes. As Mr. Hambidge's brief also explains, in situations like this, the public interest and balance-of-equities factors are one-sided. BlueBr37–38. As explained *supra*, public policy favors veterans receiving the benefits they are due. On the other side of the ledger, there is *no* legitimate public interest in the VA

having the freedom to reapply an *unlawful rule*. Nor does precluding the VA from doing so in such cases impose any burden. To the contrary, allowing the VA to continue its nonfeasance harms not only Mr. Hambidge but increases the likelihood of harm to other veterans. *See* BlueBr11 (citing other instances where the Secretary has applied this regulation to other veterans after the statute was amended).

The injunction factors therefore ensure that, even when the Veterans Court's unlawful expanded test is set aside, the proverbial "floodgates" will not open. In some cases, legal issues will be up for serious dispute. In other cases, an injunction might present a more nuanced balance-of-equities/public-interest question. Thus, the Veterans Court will still retain the ability to ensure that requests for writ relief are appropriate under the traditional, relevant factors, while not simultaneously synthesizing new factors that burden veterans.

## II. The Veterans Court's inaction is contrary to law, harmful to Mr. Hambidge, and contrary to the veterans benefit system's pro-claimant purpose

The Veterans Court did not make an explicit finding that Mr. Hambidge's petition was moot, but in refusing to direct the VA to take corrective action, the Veterans Court undermined the veteran benefit system's pro-claimant purpose. Mr. Hambidge's petition is not moot because (1) the Secretary has not indicated any intent to change the unlawful regulation and (2) even if the Secretary had

indicated an intent to act, the Secretary has not acted. Until the Veterans Court directs the Secretary to act, there is every reason to believe that the VA will continue to apply the unlawful regulation and continue to harm veterans.

## A. There is no indication or statement from the Secretary of an intent to change the VA's challenged regulation

Mr. Hambidge's petition is not moot because there is no indication or statement from the Secretary of any intent to change the regulation in question, 38 C.F.R. § 21.4020(b).

Official abandonment of a challenged practice "is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). But there has been no official abandonment here. The VA's unlawful regulation is still in effect and thus it is still binding as a matter of law. *See Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988) (explaining that government officials must follow their own regulations). It makes no difference that internal VA manuals conflict with the regulation because the VA's internal manuals do not bind the Board or other adjudicators besides the VA staff making initial benefits decisions. *Nat'l Org. of Veterans' Advocs. Inc. v. Sec'y of Veterans Affs.*, 981 F.3d 1360, 1376 (Fed. Cir. 2020) (en banc). The Secretary has made no commitment to change the unlawful regulation and the Veterans Court can and should exercise its power to enjoin the Secretary from enforcing its terms.

**B.** **The Secretary has not acted, even assuming
the Secretary intends to**

Even if the Secretary *had* committed to address the issue, because the
Secretary has not acted, the Veterans Court is not deprived of jurisdiction to
consider the issue. *See Freund*, 35 Vet. App. 466.

The Supreme Court has recognized that a controversy does not become moot
after the defendant voluntarily ceases a challenged practice unless "interim relief or
events have completely and irrevocably eradicated the effects of the alleged
violation." *Chapman L. Firm Co. v. Greenleaf Const. Co.*, 490 F.3d 934, 939–40
(Fed. Cir. 2007) (citing *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). As the
Veterans Court observed in *Freund*,

> a promise to act and actually acting are different things. After all, in
> the mootness context, even when a defendant voluntarily ceases
> wrongful conduct—the equivalent of 'fixing' a problem—a case is not
> moot unless there is no reasonable expectation that the wrongful
> conduct could resume. And the Supreme Court has made clear,
> showing that is the case is a 'formidable burden.'

35 Vet. App. at 483 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs.
(TOC), Inc.*, 528 U.S. 167, 189–190 (2000)). Multiple courts have found that, in
various contexts, mere "assertions that [the agency] intends to meet ... [statutory]
standards do not suffice to moot the issue." *Gates v. Cook*, 376 F.3d 323, 337 (5th
Cir. 2004); *N.Y. Pub. Int. Rsch. Grp. v. Whitman*, 321 F.3d 316, 327 (2d Cir. 2003)
(mere "letter of commitment" is insufficient to demonstrate mootness); *CSI*

*Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 414 (D.C. Cir. 2011) (declining to find mootness where "the agency's promised rulemaking has yet to occur" and its cessation could be "merely temporary" if it "does not see fit to change its legal position").

As the Secretary has made no commitment to cease the wrongful conduct, the Secretary has clearly not met the "formidable burden" of demonstrating that there is no reasonable expectation that the wrongful conduct would not resume. *See Friends of the Earth*, 528 U.S. at 190. To the contrary, multiple veterans have been subject to improper application of 38 C.F.R. §21.4020(b) despite repeated expressions by the Veterans Court that it was "troubled" and "baffled" by the Secretary's inaction. *See, e.g., [Title Redacted by Agency],* Bd. Vet. App. 1646321, 2016 WL 8190695, at *2, *6 (Dec. 9, 2016); *[Title Redacted by Agency]*, Bd. Vet. App. 22067681, 2022 WL 18541698, at *1, *4 (Dec. 8, 2022); Appx6. It is therefore entirely reasonable to expect that the unlawful conduct *will* continue. Consequently, Mr. Hambidge's petition cannot be moot.

### C.  Reapplication of the regulation is likely and may harm Mr. Hambidge and other veterans

The regulation is still in effect, and so it is a harmful "written policy." *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004). A petitioner "may 'demonstrate that [an] injury is likely to recur' by showing 'that the defendant had, at the time of the injury, a written policy, and that the injury

'stems from' that policy.'" *Id.* at 1081 (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001)). Where harm arises from a written policy, "there is an implicit likelihood of its repetition in the immediate future." *Id.*

Here, the harm to Mr. Hambidge and other veterans arises not just from a written policy, but from a written unlawful regulation. And despite the provisions in the internal VA manuals, the regulation has been enforced against multiple veterans to improperly deny them education benefits under § 21.4020. *See, e.g., [Title Redacted by Agency],* 2016 WL 8190695, at *2, *6; *[Title Redacted by Agency]*, 2022 WL 18541698, at *1, *4. Neither case spurred any change, resulting in Mr. Hambidge's denial.

It is reasonable to expect the Secretary will continue to improperly enforce § 21.4020 to deny education benefits. *See infra* Section II.B (the Secretary has not met the "formidable burden" of demonstrating a reasonable expectation that the wrongful conduct would not resume). No prior actions by the Board have moved the Secretary to action on this issue, and benefits adjudication is managed by a large force of front-line agency officials—who may inadvertently or purposely (thinking it binding) apply the unlawful regulation.

The impact of the Veterans Court's rule will be broad even in the context of education benefits alone. In 2023, there were over 800,000 beneficiaries of VA education-related benefits. *See* VA, *Annual Benefits Reports: Education*.[3]

### D. The Veterans Court's mootness doctrine is contrary to the veterans-benefits system's pro-claimant nature

The veterans benefit system is meant to be pro-claimant. The VA claims process "is designed to function throughout with a high degree of informality and solicitude for the claimant." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 311 (1985). When a veteran files a claim, "the adjudicatory process is not truly adversarial." *Shinseki v. Sanders*, 556 U.S. 396, 412 (2009). And unlike in more traditional litigation like tort or contract cases, "[t]he government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them." *Barrett v. Nicholson*, 466 F.3d at 1044.

Part of that pro-claimant nature means that the government is obligated to help. For instance, Congress expressly instructs the VA to assist veteran claimants in obtaining benefits. *See, e.g.*, 38 U.S.C. § 5103A (obligating the VA to assist veteran claimants in developing their claims); *id.* § 5107(b) (obligating the VA to

---

[3] https://www.benefits.va.gov/REPORTS/abr/docs/2023-education.pdf [https://perma.cc/XU3H-A9BK].

give veterans "the benefit of the doubt" in adjudicating benefits claims). "VA employees will be truly veteran-centric by identifying, fully considering, and appropriately advancing the interests of veterans and other beneficiaries." 38 C.F.R. § 0.601(c). Additionally, voluntary remands to the agency are common in veterans' cases.

That pro-claimant nature is not restricted to the benefits-filing process but extends to veterans-benefits litigation. In enacting the VJRA and thereby establishing the Veterans Court, "Congress intended to preserve the historic, pro-claimant system" as a whole. *Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998). The "entire scheme," from initial adjudication through court proceedings, "is imbued with specific beneficence from a grateful sovereign." *Barrett v. Principi*, 363 F.3d at 1320.

The Veterans Court's approach to mootness, its assessment of the likelihood of irreparable harm, and its exercise of authority under the AWA should reflect the "solicitude for the claimant" that Congress intended when it established the veteran benefits system. The decision in Mr. Hambidge's case does not reflect that solicitude and should be reversed.

## CONCLUSION

The Court should reverse the Veterans Court's order denying writ relief.

Respectfully submitted,

PERKINS COIE LLP

By: /s/Alec W. Farr

Alec W. Farr

Counsel for *Amicus* National
Veterans Legal Services Program

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Federal Circuit Rule 29(b). The brief contains 5,671 words, excluding the portions exempted by rule, as counted by the word-processing software used to prepare it.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Times New Roman type.


Dated:  June 24, 2024                        /s/Alec W. Farr_____

                                                              Alec W. Farr